THE CITY OF SOUTH BEND *v.* PAXON ET UX.

WATERCOURSE.—*Obstruction of, by City.—Streets.—Sewers.—Negligence.—Measure of Damages.—Instruction.—Rents.—Permanent Injury.*—In an action by the owner of a lot lying within a city, against the city, for alleged negligence in the construction and repair of its streets and sewers, whereby a stream of living water, previously flowing freely across the plaintiff's lot, was so obstructed as to back water upon the plaintiff's premises and destroy his cellar, it was proper to instruct the jury, that if they found "for the plaintiff, the measure of damages" would "be the fair rental value of" the "premises, or such part as" they found "from the evidence" the plaintiff had "been deprived of during such time as" such deprivation necessarily existed ; and that if they found that "the value of the premises" had "been permanently diminished," the plaintiff is "entitled to compensation" therefor.

SAME.—*City is Bound to Repair its Sewers.*—A city incorporated under the general law of this State has exclusive control over public sewers, and therefore, on constructing a sewer through which to flow a stream of water, it is liable for damages caused, without the fault of a property owner, by the negligence of the city in keeping such sewer in repair.

From the St. Joseph Circuit Court.

*T. S. Stanfield, J. Brownfield, Jr.*, and *A. Anderson*, for appellant.

*J. Davis, W. G. George* and *L. Hubbard*, for appellees.

Howk, J.—In this action, the appellees sued the appellant in a complaint of a single paragraph, wherein they alleged, in substance, that the appellee Caroline M. Paxon was the owner, and in the possession by joint occupancy with her husband, her co-appellee, of certain town lots, particularly described, within the limits of the city of South Bend, which had been conveyed to her in fee-simple, by warranty deed dated August 28th, 1866 ; that, at that time, there was a stream of water, fed and supported by living springs, flowing across said town lots, and having a free, easy and rapid egress into the St. Joseph River, by which the waters were carried away; that, at the date of said deed, the appellees took possession of said lots and erected thereon a comfortable frame dwelling-house, with a dry and convenient cellar thereunder, at the intersection of Madison and St. Louis streets, and, during the year 1867, they moved into and have ever since occupied the said dwelling-house as their family residence ; that, for a number of years after their occupancy of said dwelling, the said running stream, which had its head a mile or more in a south-easterly direction above the appellees' said residence, continued to flow in its natural channel across the appellees' said lots, and carried off, by free and rapid flow, all the water accumulating by rain-fall and the discharge of said living springs, and discharged the same into said St. Joseph River, so that, during said time, the appellee Caroline M. enjoyed her said property and was not damaged by the waters of said stream ; that said lots and improvements were then worth two thousand dollars ; that, during said time, a living spring, affording the appellees an unfailing supply of pure and cool water, appeared on said lots and discharged into said running stream ; that the appellant, having exclusive jurisdiction of the improvement and drainage of streets and the building of sewers, within its corporate limits, on or about the 1st

day of May, 1868, began a system of street improvements in the vicinity of the said town lots, and caused the said Madison and St. Louis streets to be graded, and by means thereof the said running stream of water, where it crossed the said streets below the appellees' lots, was filled up to the depth of several feet, and the flow of said water was obstructed and prevented; that the appellant had wholly failed to provide any way of exit for the waters of said stream, and had so negligently and unskilfully provided for the drainage of the waters of said stream, that they were entirely choked up and their flow obstructed below the appellees' lots, so that, by reason of the wrongful filling up of said stream, and the appellant's failure to provide other and sufficient drainage therefor, the waters accumulating on and above appellees' lots had, for several years past, no sufficient outlet, but had remained standing on said lots until evaporated by the sun or otherwise; and that, by the unskilful and careless grading of said streets, the appellant had caused a largely increased volume of water to flow on said lots, and had provided no sufficient drainage therefor; that, by means of the premises, the appellees' cellar had been filled with water and destroyed; that the waters stood upon said lots until they became foul, putrid and unwholesome, and the health of the appellees and of their family had been thereby injured, and they had been subjected to great expense for physicians' bills and medicines; by reason of which, and of the depreciation in value of their said property, resulting from the said wrongful, unskilful and negligent acts of the appellant, the appellees, without fault or negligence on their part contributing thereto, had been damaged in the sum of seven thousand dollars, for which they demanded judgment, and for other proper relief.

To this complaint, the appellant answered by a general denial, and the cause being at issue was tried by a jury,

and a verdict was returned for the appellees, assessing damages in the sum of seventy-five dollars. The appellant's motion for a new trial having been overruled, and its exception entered to this decision, judgment was rendered on the verdict.

The only error assigned by the appellant, in this court, is the overruling by the court below of its motion for a new trial. In this motion, a large number of causes were assigned for such new trial; but we are informed, in the brief of the appellant's counsel in this court, that "the particular error relied upon by appellant for the reversal of this cause is in the instructions given by the court." In our consideration and decision of this cause, therefore, we shall limit ourselves to an examination of the instructions of the court to the jury trying the cause, and to such only of these instructions as the appellant's counsel has complained of in his well considered brief of this cause. It may be properly remarked in the outset, that neither the appellees nor their counsel have favored this court with any brief, in support of the rulings or instructions of the court below in this case.

The first instruction complained of in argument, by the appellant's attorneys, reads as follows:

"No. 6. If you find for the plaintiff, the measure of damages will be the fair rental value of her premises, or such part as you find from the evidence she has been deprived of, during such time as she has necessarily been deprived of them; and, if you find the value of the premises has been permanently diminished, then she is entitled to compensation for such permanent diminution."

It will be seen from this instruction, that it contained two separate and distinct propositions, and it seems to us that the instruction was not erroneous as to either proposition. It is intimated, rather than asserted, in the brief of the appellant's counsel, that the appellees' complaint contained no allega-

tion that their property had suffered any permanent injury, from, or by reason of, any of the alleged wrongful or negligent acts of the appellant.   In this intimation, it will be seen, we think, from the summary of the complaint set out in this opinion, that counsel were probably mistaken; for the appellees expressly alleged, that, by reason of the wrongful and negligent acts of the appellant, their cellar had been filled with water and destroyed.   We think, therefore, that the instruction of the court, above quoted, was authorized by, and applicable to, the case made in and by the allegations of the complaint.

In this instruction, as we construe it, the court virtually said to the jury, that, if they found for the appellees from the evidence, that the allegations of their complaint, or a material part thereof, were true, the measure of their damages would be the fair rental value of their premises, or of such part thereof as the jury might find from the evidence they had been deprived, during such time as they had necessarily been deprived thereof by reason of the alleged wrongful or negligent acts of the appellant; and if the jury should find from the evidence, that the value of the appellees' premises had been permanently diminished thereby, then they would be entitled to compensation in damages for such permanent diminution of the value thereof.   This was the plain import and legal effect of the instruction above quoted, and we think it must have been so understood by the jury trying the cause. It seems to us, that, as to each of the propositions contained in this instruction, it stated correctly the true measure of the appellees' damages.   Nor do we think that the instruction was fairly open to the objection urged against it by appellant's counsel, that the jury were therein and thereby " directed to assess excessive damages."   The case of *The City of Indianapolis* v. *Huffer*, 30 Ind. 235, cited by counsel in support of this objection to the instruc-

tion, is obviously not in point, as will be readily seen from an examination of the opinion of the court in that case. It appeared from the answers of the jury to interrogatories, in the case cited, that they had allowed the appellee damages for the loss of or injury to certain things which were constituent parts of the rental value of his premises, and to this they had added a sum in gross for injury to the rental value of his premises, and this court held, very properly we think, that such an assessment of damages was necessarily excessive. But the instruction of the court, above quoted, as we construe it, has reference to two distinct subjects, neither of which enters into or forms a part of the other, and, if followed, it could not possibly lead to a double assessment of damages. The court did not err, we think, in this instruction.

The appellant's counsel complain, in argument, of another instruction of the court, which reads as follows:

" No. 8. If you find from the evidence, that the defendant City had, prior to the construction of the drain across St. Louis street, established a system of general drainage for the city, and that said sewer was a part of said general system, or that, since the construction of such sewer, the city so graded and improved its streets and arranged its sewers and drains as to connect with said sewer across St. Louis street, and thereby constituted and made it a part of its system of general sewerage and drainage for the city, then the defendant, although it may not originally have been obliged to construct the sewer in controversy, yet, having elected so to do, and having acted under said election and constructed the drain, it is bound to keep it in repair; and if you find from the evidence, that it has negligently and carelessly suffered the same to become obstructed and out of repair, and that the plaintiff has been injured thereby, without herself in any manner contributing to said injury, that is, using ordinary care to

prevent it, then she is entitled to be compensated for such injury."

It is insisted by the appellant's counsel, that this instruction " is not the law; that the city is not bound to keep open every drain that has been constructed,—not bound, because it has once furnished a convenience, to warrant it to the property owner, that has enjoyed it, in perpetuity."

It does not appear from the record of this action under what law the appellant was incorporated as a city; but it has been repeatedly held by this court, that, where a city is a party to a suit, it will be presumed, nothing appearing to the contrary, that such city is incorporated under the general law of this State providing for the incorporation of cities. *Lowrey* v. *The City of Delphi*, 55 Ind. 250.

Under section 61 of this general law, the common council of a city have " exclusive power" over the streets, highways and alleys, within such city. 1 R. S. 1876, p. 300. In section 50 of said general law, it is provided that " The common council shall have exclusive power to keep open streams, and preserve, and if necessary and expedient, change the course [thereof], and of rivers passing through or bordering upon the corporate limits of such city," etc. 1 R. S. 1876, p. 287. In the *forty-third* clause of section 53 of said general law, it is provided that " the common council shall have the power to enforce ordinances : * *

" To construct and regulate sewers, drains and cisterns, and provide for the payment of the cost of constructing the same," etc. 1 R. S. 1876, p. 294.

These were the powers of the appellant, as an incorporated city, under the general law of this State for the incorporation of cities, over the streets, the stream of water and the sewer or drain, mentioned in the appellees' complaint in this action. Where such powers exist, it can not be questioned, as it seems to us, that the duty arose therefrom, and devolved upon the appellant, to keep open the

stream of water, and to keep the sewer or drain under St. Louis street in such repair as would permit the free and unobstructed flow of such water through the same. This doctrine has been recognized and acted upon in several recent decisions of this court. *Lowrey* v. *The City of Delphi, supra; The Town of. Centerville* v. *Woods,* 57 Ind. 192; *House* v. *The Board,* etc., of *Montgomery County,* 60 Ind. 580.

If, as the court charged the jury in the instruction last quoted, the appellant had constructed the sewer or drain under St. Louis street, it was bound under the law, as it seems to us, to keep the same in such repair that it would accomplish the purpose for which it was intended ; and if the appellant had negligently and carelessly suffered such sewer or drain, so constructed by it, to become obstructed and out of repair to such an extent that the appellees' premises, without fault on her part, were thereby injured, then it seems to us, that the appellant became and was liable in this action, and the appellee became and was entitled to compensation in damages for the injury to her premises.

In our opinion the instruction last quoted contained a true statement of the law applicable to this case, and was not erroneous. Under the allegations of the complaint in this case, it was clearly the legal duty of the appellant to keep the sewer in question in good repair ; and whether this duty may or may not continue in perpetuity, will depend very much upon the powers with which the appellant may hereafter be clothed by legislative authority. If the appellant's powers over the subject under consideration, as they now exist, continue in perpetuity, then the appellant's duties, necessarily resulting from such powers, may also be expected to continue in perpetuity.

We have now fully considered the instructions of the court, complained of by the appellant's counsel in this

court, and we have been led to the conclusion that no error was committed by the court below in either of the said instructions.

The judgment is affirmed, at the appellant's costs.